UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: COINBASE CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Civil Action No. 1:25-md-03153-ER |

**COINBASE'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................................1
STATEMENT ................................................................................................................................1
      A.      Plaintiffs' Assent To The Coinbase User Agreement ................................................1
             1.      Julian Okuyiga and Michael Gonzalez .......................................................2
             2.      Susan Byrns .................................................................................................3
      B.      The 2025 User Agreement's Arbitration Provision...................................................4
      C.      Procedural Background.............................................................................................5
ARGUMENT .................................................................................................................................6
I.      The FAA Requires Plaintiffs To Arbitrate Their Claims ..........................................6
      A.      Plaintiffs Agreed To Arbitrate Their Claims Against Coinbase ...............................7
      B.      Plaintiffs Cannot Meet Their Burden To Show The Agreement Is
            Inapplicable Or Unenforceable ...............................................................................10
             1.      The Agreement covers this dispute .............................................................11
             2.      The Agreement is valid and enforceable.....................................................12
II.     The Court Should Stay This Case ...........................................................................15
CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aggarwal v. Coinbase, Inc.*,
   685 F. Supp. 3d 867 (N.D. Cal. 2023) ................................................................................8

*Alfia v. Coinbase Glob., Inc.*,
   2022 WL 3205036 (N.D. Cal. July 22, 2022)......................................................8, 9, 11, 13

*Anonymous v. JP Morgan Chase & Co.*,
   2005 WL 2861589 (S.D.N.Y. Oct. 31, 2005)...................................................................13

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).............................................................................................................6

*Berk v. Coinbase, Inc.*,
   840 F. App'x 914 (9th Cir. 2020) ..........................................................................7, 10, 11

*Bielski v. Coinbase, Inc.*,
   87 F.4th 1003 (9th Cir. 2023) .....................................................................................12, 13

*Brooks v. WarnerMedia Direct, LLC*,
   2024 WL 3330305 (S.D.N.Y. July 8, 2024) ......................................................................10

*Camilo v. Lyft, Inc.*,
   384 F. Supp. 3d 435 (S.D.N.Y. 2019)..................................................................................7

*Carolus v. Coinbase Glob., Inc.*,
   2025 WL 3033736 (N.D. Cal. Oct. 7, 2025)........................................................7, 10, 12, 14

*Carr v. Credit One Bank*,
   2015 WL 9077314 (S.D.N.Y. Dec. 16, 2015) ...................................................................13

*Chen-Oster v. Goldman, Sachs & Co.*,
   449 F. Supp. 3d 216 (S.D.N.Y. 2020)............................................................................6, 13

*Chicago Title Ins. Co. v. AMZ Ins. Servs., Inc.*,
   188 Cal. App. 4th 401 (2010) ..............................................................................................8

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) (per curiam)..........................................................................................7

*Coleman v. Coinbase, Inc.*,
   2025 WL 2256117 (S.D. Ind. Aug. 7, 2025) .......................................................................8

*Cordero v. Coinbase, Inc.*,
   2025 WL 2223495 (N.D. Cal. Aug. 5, 2025) ....................................................7, 10, 12, 14

*Daly v. Citigroup Inc.*,
    939 F.3d 415 (2d Cir. 2019)...........................................................................................11

*Donovan v. Coinbase Glob., Inc.*,
    649 F. Supp. 3d 946 (N.D. Cal. 2023) .....................................................................10, 13

*Flores v. Coinbase, Inc.*,
    2023 WL 3564756 (C.D. Cal. Apr. 6, 2023) ...............................................................8, 9

*Ghazizadeh v. Coursera, Inc.*,
    737 F. Supp. 3d 911 (N.D. Cal. 2024) ............................................................................10

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000).........................................................................................................11

*Gutierrez v. Wells Fargo Bank, NA*,
    889 F.3d 1230 (11th Cir. 2018) .......................................................................................6

*Harrington v. Atl. Sounding Co.*,
    602 F.3d 113 (2d Cir. 2010).............................................................................................7

*Hastings v. Nifty Gateway, LLC*,
    724 F. Supp. 3d 241 (S.D.N.Y. 2024)..............................................................................7

*Heckman v. Live Nation Enter., Inc.*,
    120 F.4th 670 (9th Cir. 2024) ........................................................................................14

*In re Facebook Biometric Info. Priv. Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) .........................................................................10

*Kamath v. Coinbase, Inc.*,
    2024 WL 950163 (N.D. Cal. Mar. 5, 2024).................................................................8, 11

*Kattula v. Coinbase Glob., Inc.*,
    2023 WL 4373385 (N.D. Ga. July 6, 2023)..................................................................8, 9

*MacClelland v. Cellco P'ship,*
    609 F. Supp. 3d 1024 (N.D. Cal. 2024) .........................................................................14

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)............................................................................................8, 9

*Pearl v. Coinbase Glob., Inc.*,
    2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ...................................................................8

*Pilon v. Discovery Commc'ns, LLC*,
    769 F. Supp. 3d 273 (S.D.N.Y. 2025)............................................................................14

*Plazza v. Airbnb, Inc.*,
 289 F. Supp. 3d 537 (S.D.N.Y. 2018)..................................................................................12

*Reznik v. Coinbase, Inc.*,
 2024 WL 1055002 (S.D.N.Y. Mar. 11, 2024) ......................................................8, 9, 11, 15

*Schnabel v. Trilegiant Corp.*,
 697 F.3d 110 (2d Cir. 2012).............................................................................................6, 8

*Smith v. Spizzirri*,
 601 U.S. 472 (2024)..............................................................................................................15

*Spinelli v. National Football League*,
 903 F.3d 185 (2d Cir. 2018)................................................................................................12

*Sultan v. Coinbase, Inc.*,
 354 F. Supp. 3d 156 (E.D.N.Y. 2019) ...................................................................................8

*Tarverdiyeva v. Coinbase Glob., Inc.*,
 2021 WL 4527960 (M.D. Fla. Sept. 8, 2021).....................................................................8, 9

*Teta v. Go N.Y. Tours, Inc.*,
 738 F. Supp. 3d 502 (S.D.N.Y. 2024)................................................................6, 7, 8, 9, 11

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
 489 U.S. 468 (1989)...............................................................................................................8

*Whitt v. Prosper Funding LLC*,
 2015 WL 4254062 (S.D.N.Y. July 14, 2015) ........................................................................9

*Woody v. Coinbase Glob., Inc.*,
 2023 WL 6882750 (N.D. Cal. Oct. 17, 2023)........................................................................8

**STATUTES**

9 U.S.C.
 § 2.........................................................................................................................................6
 § 3.......................................................................................................................................15

**INTRODUCTION**

Coinbase and its users were the victims of a scheme in which criminal actors sought to steal Coinbase user account data by bribing customer support agents located overseas. After Coinbase discovered the criminal data theft, it did the right thing: it notified and cooperated with law enforcement, it notified users and alerted them to risks of fraud and steps they could take to protect themselves, and it offered to voluntarily reimburse retail customers who sent funds to the criminals as a result of the incident. Despite these efforts, and despite the fact that Coinbase's robust data security practices have at all times been lawful and appropriate, litigation was filed just hours after Coinbase announced the data theft.

Whatever the merit of these claims, the merits are not properly before this Court. Like all other Coinbase customers, Plaintiffs affirmatively assented to the terms of Coinbase's Individual User Agreement when they created their Coinbase accounts. That User Agreement conspicuously states that the parties "agree to arbitrate all Disputes in binding arbitration" conducted "only on an individual basis." Plaintiffs all assented to this arbitration—and most did so multiple times. As numerous federal courts have consistently held (including the Ninth Circuit and two courts in this district), Coinbase's arbitration provision is binding and enforceable, and it covers all claims arising out of the use of Coinbase's services. Nothing about Plaintiffs' claims here justifies any different treatment. This Court should grant Coinbase's motion to compel arbitration, and stay these proceedings pending arbitration.

**STATEMENT**

**A.     Plaintiffs' Assent To The Coinbase User Agreement**

Coinbase operates the largest digital asset exchange in the United States. Its platform permits users to purchase, sell, and conduct other financial transactions involving digital assets, such as bitcoin and ether. To use Coinbase's platform, all Coinbase customers must first create a

Coinbase account.  Declaration of Jerry Nacoste ("Nacoste Decl.") ¶ 6.  And to create an account, all customers must affirmatively assent to Coinbase's Individual User Agreement, which contains an arbitration provision.  *Id.* ¶¶ 6-7.  Periodically, Coinbase makes updates to the User Agreement's arbitration provision, the most recent of which was in April 2025.  *Id.* ¶¶ 7-8.  That 2025 User Agreement governs in this case:  All three Plaintiffs have assented to its terms, and it was the version of the agreement that was in effect when Plaintiffs brought their claims.

1. **Julian Okuyiga and Michael Gonzalez**

Julian Okuyiga created his Coinbase account and first affirmatively assented to the User Agreement (including its arbitration provision) on May 10, 2015.  Nacoste Decl. ¶ 13 & Ex. B.  Michael Gonzalez created his account and first affirmatively assented to the User Agreement (including its arbitration provision) on June 7, 2017.  *Id.* ¶ 14 & Ex. D.  Coinbase subsequently updated the User Agreement in January 2022 and emailed existing customers informing them of the forthcoming update.  *Id.* ¶ 15 & Ex. G.  When existing customers like Okuyiga and Gonzalez logged into their Coinbase accounts on or after February 3, 2022, they were routed to a landing page that stated that Coinbase was "updating our User Agreement" and prompted them to "review and accept [the] updated terms."  *Id.* ¶ 16 & Exs. H-I.  The landing page presented a scroll-box containing the text of the 2022 User Agreement and instructed customers to "review and accept [the] updated terms and conditions to continue using [their] Coinbase account."  *Id.*  At the bottom of the page was a large blue button that customers were required to click to "Accept terms."  *Id.*  Customers could not continue using their Coinbase accounts until they clicked the "Accept terms" button.  *Id.* ¶ 16.  Coinbase's business records reflect that Gonzalez logged into his account and assented to the 2022 User Agreement by clicking the "Accept terms" button on February 6, 2022, and that Okuyiga assented using the same process on February 17, 2022.  *Id.* ¶¶ 19-20 & Exs. B, D.

The 2022 User Agreement provided that Coinbase could "amend or modify this Agreement at any time by posting the revised agreement on the Coinbase Site and/or providing a copy to you," and that "Your continued use of the Services after the posting of a Revised Agreement constitutes your acceptance of such Revised Agreement." Nacoste Decl. Ex. F at 1 ("Amendment of these Terms"). Consistent with this language, Coinbase emailed Gonzalez and Okuyiga in mid-April 2025 to notify them of the 2025 update to the User Agreement. *Id.* ¶¶ 23-25 & Exs. J-L. Coinbase's records show that this email was sent to Okuyiga on April 10, 2025 and to Gonzalez on April 11, 2025. *Id.* ¶¶ 24-25 & Exs. K-L. The email stated that Coinbase was revising the User Agreement's arbitration provisions, and that the revised terms would "apply only to disputes that you or we initiate after May 15, 2025." *Id.* Ex. J. The email provided a hyperlink to the full terms of the updated 2025 User Agreement and encouraged users to "make sure [to] read the updated User Agreement." *Id.* Like the 2022 version, the 2025 User Agreement states that "continued use of the Services after the posting of a Revised Agreement constitutes your acceptance of such Revised Agreement." *Id.* Ex. A at 2 ("Amendment of these Terms"). Coinbase's records confirm that, since receiving notice of the 2025 update to the User Agreement, Okuyiga and Gonzalez have continued to use their Coinbase accounts by logging in and making transactions. *Id.* ¶¶ 26-28.

### 2. Susan Byrns

Susan Byrns created her Coinbase account on April 18, 2025 and during the sign-up process affirmatively assented to the 2025 User Agreement. Nacoste Decl. ¶¶ 29-33. At the time Byrns created her account, the Coinbase website presented new users with a screen instructing them to click a checkbox stating, "I agree to the User Agreement." *Id.* ¶ 30. The words "User Agreement" appeared in blue font and hyperlinked to the text of both the 2022 and 2025 versions of the agreement—with the 2022 arbitration provision provided in Appendix 5, and the 2025

3

arbitration provision provided in Appendix 6.  *Id.* ¶ 31 & Ex. M App'x 5-6.  At the top of the hyperlinked page, in bold font, the User Agreement included an "Important notice to users who," like Byrns, "sign[ed] up on or after March 27, 2025:  You agree … that the Arbitration Agreement in Appendix 6 [i.e., the 2025 arbitration provision] and not Appendix 5 immediately applies to you."  *Id.* Ex. M at 1.  New customers like Byrns could not complete the sign-up process without affirmatively clicking the checkbox stating "I agree to the User Agreement."  *Id.* ¶ 32.  According to Coinbase's records, Byrns checked the box when creating her account on April 18, 2025.  *Id.* ¶ 33 & Ex. N.

  B.  The 2025 User Agreement's Arbitration Provision

The 2025 User Agreement (like the 2022 User Agreement and other prior iterations) informs customers in its first section, in bold, capital letters, that the agreement "**CONTAIN[S] PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND COINBASE**" and "**AMONG OTHER THINGS … INCLUDES AN AGREEMENT TO ARBITRATE**."  Nacoste Decl. Ex. A at 2 ("Dispute Resolution").  The arbitration provision is then titled (again in bold, all capital lettering) "**DISPUTE RESOLUTION (INCLUDING ARBITRATION AGREEMENT; CLASS ACTION WAIVER; JURY TRIAL WAIVER**."  *Id.* App'x 5.  It states, under a bolded "**Arbitration Agreement**" sub-heading, "**You and we agree to arbitrate all Disputes in binding arbitration.**"  *Id*.  "The term 'Disputes' is intended to be interpreted broadly," and is "defined as any dispute, claim, or disagreement arising out of or relating in any way to our relationship with you, [Coinbase's] Services, the Coinbase Site, any Communications you receive, any products or services sold or distributed through the Coinbase Site, or the User Agreement."  *Id*.  The only exceptions are "Disputes about whether the Dispute is arbitrable," and small-claims-court, intellectual property, and securities laws disputes.  *Id.* App'x 5.

4

The agreement also provides that the parties may not assert claims as part of a class action, stating (again in bold and all capital letters): **"YOU AND COINBASE AGREE THAT, EXCEPT AS SPECIFIED IN THE BATCH ARBITRATION PROVISION SET FORTH BELOW, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS."** Nacoste Decl. Ex. A App'x 5.

C.  **Procedural Background**

On May 15, 2025, Coinbase announced that it had been targeted by criminal actors who sought to steal account data for a portion of its user base by bribing customer support agents overseas. *See* Consolidated Class Action Compl. ("CCAC") ¶ 5 (Dkt. 72). Upon discovery of the data theft incident, the personnel involved were immediately terminated and heightened fraud-monitoring protections were implemented. *See* Coinbase, *Protecting Our Customers—Standing Up to Extortionists*, https://tinyurl.com/jmbbxnbv (May 15, 2025). Coinbase rejected the threat actor's attempt at extortion, and instead established a $20 million reward fund for information leading to the arrest and conviction of the attackers. *See id.* Coinbase also shared that it would voluntarily reimburse retail customers who had sent funds to the threat actor as a direct result of the incident. *See id.*

Following Coinbase's disclosure of the data theft incident, several Coinbase customers filed putative class actions alleging that Coinbase failed to take sufficient measures to protect their personal information. The Judicial Panel on Multidistrict Litigation centralized those cases before this Court, Dkt.1, and this Court appointed interim lead class counsel, Dkt. 58. On January 15, 2026, interim counsel filed a consolidated class action complaint naming Okuyiga, Gonzalez, and Byrns (each of whom had not previously filed suit) as the sole named Plaintiffs. *See* CCAC ¶¶ 18-20. The eleven-count consolidated complaint asserts common-law claims of

5

negligence, negligence per se, breach of implied contract, breach of fiduciary duty, and unjust enrichment, *id.* ¶¶ 193-231, 240-245, as well as claims under the Declaratory Judgment Act, California's Customer Records Act, Consumer Privacy Act, Unfair Competition Law, and Consumer Legal Remedies Act, and New York's Deceptive Acts and Practices Act, *id.* ¶¶ 246-308.[1]

## ARGUMENT

**I.　THE FAA REQUIRES PLAINTIFFS TO ARBITRATE THEIR CLAIMS**

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That language "reflects 'a liberal federal policy favoring arbitration agreements,' and places arbitration agreements on 'the same footing as other contracts.'" *Teta v. Go N.Y. Tours, Inc.*, 738 F. Supp. 3d 502, 507 (S.D.N.Y. 2024) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), and *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). The FAA applies in this case because Plaintiffs' use of Coinbase's platform to engage in financial transactions over the internet plainly involved interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (FAA reflects "the broadest permissible exercise of Congress' Commerce Clause power"); *see*

---

[1] In addition to the named Plaintiffs, three putative class members have brought individual lawsuits related to the data theft incident that have been transferred to this Court. Pursuant to MDL Case Management Order No. 1 (Dkt. 70 ¶ 8), "all orders and deadlines … including [Coinbase's] obligations to answer or otherwise respond" to these complaints have been "vacate[d]," but Coinbase reserves the right to (if necessary) compel arbitration of those Plaintiffs' claims at the appropriate time. Coinbase also does not waive and reserves the right to compel arbitration of the claims of any unnamed putative class members at the appropriate time. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234-235 (S.D.N.Y. 2020), *objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238-1239 (11th Cir. 2018).

*also, e.g.*, *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (arbitration agreement that "pertain[ed] to internet transactions" "involve[d] commerce"). Were there any doubt, the User Agreement expressly states that this "Agreement evidences a transaction involving interstate commerce and … the Federal Arbitration Act … will govern any proceedings regarding enforcement of this Arbitration Agreement." Nacoste Decl. Ex. A App'x 5.

In assessing a motion to compel arbitration under the FAA, this Court's inquiry is limited to "'two questions: (1) whether a valid agreement to arbitrate under the contract in question exists, and (2) whether the particular dispute in question falls within the scope of that arbitration agreement.'" *E.g.*, *Hastings v. Nifty Gateway, LLC*, 724 F. Supp. 3d 241, 246-247 (S.D.N.Y. 2024). The moving party "'bears an initial burden of demonstrating that an agreement to arbitrate'" exists, but once that showing has been made, "the burden shifts to the party seeking to avoid arbitration to 'show[] the agreement to be inapplicable or invalid.'" *Teta*, 738 F. Supp. 3d at 508 (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). Here, an arbitration agreement exists because Plaintiffs all assented to the terms of the Coinbase User Agreement, including its arbitration provision. Plaintiffs therefore have the burden to establish that the agreement is inapplicable or invalid—a showing they will not be able to make.

### A. Plaintiffs Agreed To Arbitrate Their Claims Against Coinbase

Plaintiffs are bound by the arbitration provision in the Coinbase User Agreement, as every federal case involving other Coinbase customers has held. *See, e.g.*, *Carolus v. Coinbase Glob., Inc.*, 2025 WL 3033736, at *4 (N.D. Cal. Oct. 7, 2025); *Cordero v. Coinbase, Inc.*, 2025 WL 2223495, at *3 (N.D. Cal. Aug. 5, 2025); *Berk v. Coinbase, Inc.*, 840 F. App'x 914, 916 (9th Cir. 2020); *Reznik v. Coinbase, Inc.*, 2024 WL 1055002, at *4 (S.D.N.Y. Mar. 11, 2024).[2]

---

[2] *See also, e.g.*, *Woody v. Coinbase Glob., Inc.*, 2023 WL 6882750, at *2 (N.D. Cal. Oct. 17, 2023), *vacated in part on other grounds*, 2024 WL 4532909 (9th Cir. Oct. 21, 2024); *Sultan v.*

7

The question whether an arbitration agreement exists is governed by "[s]tate contract law principles," *Teta*, 738 F. Supp. 3d at 508, with "due regard … given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-476 (1989). Here, the 2025 User Agreement (and its 2022 predecessor) provide that the applicable law is California law, under which an arbitration agreement is formed when "there is '[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (citing *Chicago Title Ins. Co. v. AMZ Ins. Servs., Inc.*, 188 Cal. App. 4th 401, 422 (2010)). The law of New York (Byrns's home State and the only other plausible jurisdiction that could govern, CCAC ¶ 148) applies "'substantially similar rules.'" *Meyer*, 868 F.3d at 74; *see Teta*, 738 F. Supp. 3d at 508.

Plaintiffs here all assented to the Coinbase User Agreement and its arbitration provisions by affirmatively clicking a button or checkbox indicating their acceptance after being provided the agreement's terms. As discussed (*supra* pp.2-3), Okuyiga and Gonzalez affirmatively assented to prior versions of the User Agreement when they each created their accounts, and they then affirmatively assented to the updated 2022 User Agreement by clicking an "I accept" button after being presented with a scroll-box containing the text of the 2022 agreement's terms.

---

*Coinbase, Inc.*, 354 F. Supp. 3d 156, 162 (E.D.N.Y. 2019); *Kamath v. Coinbase, Inc.*, 2024 WL 950163, at *3 (N.D. Cal. Mar. 5, 2024); *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 881 (N.D. Cal. 2023); *Flores v. Coinbase, Inc.*, 2023 WL 3564756, at *7 (C.D. Cal. Apr. 6, 2023); *Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190, at *7 (N.D. Cal. Feb. 3, 2023); *Kattula v. Coinbase Glob., Inc.*, 2023 WL 4373385, at *6 (N.D. Ga. July 6, 2023); *Alfia v. Coinbase Glob., Inc.*, 2022 WL 3205036, at *4 (N.D. Cal. July 22, 2022); *Tarverdiyeva v. Coinbase Glob., Inc.*, 2021 WL 4527960, at *1 (M.D. Fla. Sept. 8, 2021); *Coleman v. Coinbase, Inc.*, 2025 WL 2256117, at *1 (S.D. Ind. Aug. 7, 2025), *report & recommendation adopted*, 2025 WL 2822803, at *1 (S.D. Ind. Oct. 2, 2025).

Nacoste Decl. ¶¶ 13-14, 19-20.  Similarly, when she created her Coinbase account, Byrns affirmatively clicked an "I agree" checkbox next to a conspicuous hyperlink to the text of the 2025 User Agreement.  *Id.* ¶¶ 30-33.

As the Second Circuit has explained (applying California law), "[c]ourts routinely uphold clickwrap agreements" like Coinbase's because "the user has affirmatively assented to the terms of [the] agreement by clicking 'I agree.'"  *Meyer*, 868 F.3d at 75; *see also, e.g.*, *Teta*, 738 F. Supp. 3d at 509 (similar); *Whitt v. Prosper Funding LLC*, 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015) (collecting cases).  Indeed, clickwrap agreements are sufficient to show assent even if the consumer has not actually read them; the scroll-box or hyperlink "provide[s] reasonably conspicuous" "constructive notice" of the contractual terms.  *Meyer*, 868 F.3d at 79. In *Teta*, for example, this Court held that an assent process nearly identical to Coinbase's was sufficient to bind the parties because the "hyperlinked" terms provided the plaintiffs "a sufficient opportunity to read the agreement," and they then "assented to the agreement by affirmatively clicking on the box."  738 F. Supp. 3d at 508-509.

Applying the same reasoning, other courts have "repeatedly" held that Coinbase's clickwrap assent process binds customers to the terms of the User Agreement.  *Reznik*, 2024 WL 1055002, at *3 & n.4; *see also, e.g.*, *Flores*, 2023 WL 3564756, at *4; *Tarverdiyeva*, 2021 WL 4527960, at *2; *Alfia*, 2022 WL 3205036, at *2 & n.2; *Kattula*, 2023 WL 4373385, at *2 & n.1. In many cases, in fact, Coinbase customers do not even dispute that they assented.  *See, e.g.*, *Berk*, 840 F. App'x at 915; *Carolus*, 2025 WL 3033736, at *4; *Cordero*, 2025 WL 2223495, at *3; *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 951 (N.D. Cal. 2023).

Following their assent to the 2022 User Agreement via clickwrap, Okuyiga and Gonzalez assented to the 2025 User Agreement through their continued use of Coinbase's services.  The

2022 agreement provided that Coinbase could update the contractual terms "by posting the revised agreement on the Coinbase Site and/or providing a copy to you," and that "Your continued use of the Services after the posting of a Revised Agreement constitutes your acceptance of such Revised Agreement." Nacoste Decl. Ex. F at 1 ("Amendment of these Terms"). In April 2025, both Okuyiga and Gonzalez received an email informing them that Coinbase was updating the terms and providing a hyperlink to the full text of the 2025 User Agreement. *Id.* ¶¶ 23-25 & Exs. J-L. After receiving that email, both of them continued to use Coinbase's platform to engage in transactions. *Id.* ¶¶ 26-28.

As courts have consistently held, under California law, "a contract may be formed where users receive sufficient inquiry notice of a website's terms of use via email and thereafter continue to use the site." *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at *11 (S.D.N.Y. July 8, 2024); *see also Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 933-934 (N.D. Cal. 2024) ("Plaintiff's consent to the 2015 TOU, which contained a 'continuing use' provision, combined with Plaintiff's continued use … is sufficient to demonstrate manifestation of consent to the updated terms sent directly to the email address Plaintiff had on file."); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (holding that assent established through continued use following email explaining "the terms of the user agreement were changing"). Thus, Coinbase's "email and [Plaintiffs'] continued use of Coinbase's services is enough to establish reasonably conspicuous notice and assent to the" 2025 User Agreement. *Kamath*, 2024 WL 950163, at *4.

### B. Plaintiffs Cannot Meet Their Burden To Show The Agreement Is Inapplicable Or Unenforceable

As noted, "[o]nce the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[] the agreement to be inapplicable or

10

invalid.'" *Teta*, 738 F. Supp. 3d at 508; *see also, e.g.*, *Reznik*, 2024 WL 1055002, at *3 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). Plaintiffs will not be able to make either showing.

### 1. The Agreement covers this dispute.

To establish that the 2025 User Agreement is inapplicable, Plaintiffs must establish "'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019); *see, e.g.*, *Teta*, 738 F. Supp. at 510 (similar). Here, however, all of the claims asserted fit squarely within the agreement's scope. The agreement provides: "You and we agree to arbitrate *all* Disputes," and it defines "Disputes" broadly to mean "any dispute, claim, or disagreement arising out of relating in any way to our relationship with you, [Coinbase's] Services, the Coinbase Site, any Communications you receive, any products or services sold or distributed through the Coinbase Site, or the User Agreement" itself. Nacoste Decl. Ex. A App'x 5 ("Disputes Defined" and "Arbitration Agreement") (emphasis added). As other courts have held in cases involving prior iterations of the User Agreement, this definition plainly covers claims, like Plaintiffs', that "relate to [the] provision of Coinbase services through a Coinbase account," *Alfia*, 2022 WL 3205036, at *3, and "allege[] injuries result[ing] from [] direct, arms-length dealings with Coinbase," *Berk*, 840 F. App'x at 916. Moreover, none of the exceptions to the 2025 User Agreement's arbitration provision applies here because Plaintiffs do not assert small-claims-court, intellectual-property, or securities claims. Nacoste Decl. Ex. A App'x 5 ("Arbitration Agreement"). Accordingly, Plaintiffs will not be able to show that the arbitration agreement is inapplicable.

11

## 2. The Agreement is valid and enforceable.

Plaintiffs' complaint does not include any allegations suggesting the User Agreement is unenforceable, and they will not be able to make that showing either. Under California (and New York) law, an arbitration agreement is unenforceable only when it is "both procedural[ly] and substantive[ly] unconscionab[le]." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1013 (9th Cir. 2023); *see also Spinelli v. National Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (same under New York law); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 555 (S.D.N.Y. 2018) (similar). Applying that standard, federal courts have consistently held that previous versions of the Coinbase User Agreement were valid; indeed, in *Bielski*, the Ninth Circuit reversed the only federal court to find otherwise. *Bielski*, 87 F.4th at 1015; *see also, e.g.*, *Carolus*, 2025 WL 3033736, at *5-13 (rejecting unconscionability arguments and enforcing Coinbase User Agreement); *Cordero*, 2025 WL 2223495, at *3-8 (same). The 2025 User Agreement is likewise enforceable.

*No procedural unconscionability.* The 2025 agreement is not procedurally unconscionable because it does not contain "any element of surprise." *Bielski*, 87 F.4th at 1013-1014. *Bielski* found that a (since removed) delegation clause within the User Agreement's arbitration provision produced no surprise because it was "written in plain language and in a legible-sized font." *Id.* at 1014. The broader arbitration provision in the 2025 agreement is even harder to miss. The 2025 User Agreement's introductory section states, in capital and bold letters, "**PLEASE BE AWARE THAT … APPENDIX 5 OF THIS AGREEMENT[] CONTAIN[S] PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND COINBASE. AMONG OTHER THINGS, APPENDIX 5 INCLUDES AN AGREEMENT TO ARBITRATE[.]**" Nacoste Decl. Ex. A at 2; *supra* p.4. The title of Appendix 5 then states, again in capital and bold letters, **"DISPUTE RESOLUTION**

**(INCLUDING ARBITRATION AGREEMENT**," and its text states in bold, "**You and we agree to arbitrate all Disputes in binding arbitration**," immediately before listing the limited exceptions using bolded sub-headings. *See* Nacoste Decl. Ex. A App'x 5; *supra* p.4.

Thus, the arbitration provision here is "preceded by a heading written in all capital letters and bold print," *Carr v. Credit One Bank*, 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015), and it provides a "clear statement of the arbitration agreement and its scope," *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 249 (S.D.N.Y. 2020), *objections overruled*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); *see also Alfia*, 2022 WL 3205036, at *4 (emphasizing Coinbase's use of "clearly labeled … bold print"). In circumstances like these, courts generally "decline to find procedural unconscionability." *Chen-Oster*, 449 F. Supp. 3d at 249; *see also, e.g.*, *Anonymous v. JP Morgan Chase & Co.*, 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005).

*No substantive unconscionability.* Even if the arbitration provision were procedurally unconscionable to some degree (it is not), it would still be enforceable because Plaintiffs cannot show substantive unconscionability. *See Bielski*, 87 F.4th at 1015. Under California law, an arbitration agreement is substantively unconscionable only if it is "so 'overly harsh' or 'one-sided' as to 'shock the conscience.'" *E.g.*, *Donovan*, 649 F. Supp. 3d at 953. Here, the User Agreement's arbitration provision is not one-sided; it applies to claims whether brought by Coinbase customers or by Coinbase itself. *See* Nacoste Decl. Ex. A App'x 5. It also states that arbitration will be conducted under the AAA rules, which provide several protections to ensure a fair proceeding, including a neutral arbitrator (AAA Consumer R-15(e)); an opportunity to pursue discovery (R-20); a written award (R-45); and the ability to pursue "any remedy, relief, or outcome" that "could have [been] received in court" (R-46(a)).

In the event Plaintiffs argue that the agreement's "Batch Arbitration" procedure is unconscionable, that argument should be rejected. The 2022 User Agreement included a similar procedure, and unconscionability challenges to that procedure have failed. *See Carolus*, 2025 WL 3033736, at *8-13; *Cordero*, 2025 WL 2223495, at *5. The 2025 agreement's Batch Arbitration provision is valid and enforceable as well. Batch procedures like Coinbase's enable the efficient administration of mass arbitrations and "prevent[] the manipulation of the arbitral forum's fee structure." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 297 (S.D.N.Y. 2025). Such procedures have therefore been found unconscionable only where they mandate significant delays in the adjudication of individual claims, *see, e.g.*, *MacClelland v. Cellco P'ship,* 609 F. Supp. 3d 1024, 1042-1043 (N.D. Cal. 2024), or where earlier-adjudicated cases operate as "precedent" on later cases, *Heckman v. Live Nation Enter., Inc.*, 120 F.4th 670, 685 (9th Cir. 2024). Neither of those features is present here. The 2025 User Agreement states that "arbitrations administered pursuant to this Batch Arbitration provision may be administered concurrently," that "[a]rbitrators appointed pursuant to this Batch Arbitration provision shall issue separate awards for each Coinbase user," and that "an arbitral award shall have no preclusive effect in any other proceeding involving other Users." Nacoste Decl. Ex. A App'x 5 ("Arbitration Procedure" and "Batch Arbitration"). Disputes subject to the Batch Arbitration procedure are also subject to the JAMS rules, which offer protections similar to the AAA rules. *See, e.g.*, JAMS Streamlined R. 12 (neutral arbitrator), R. 13 (discovery), R. 19 (written award and scope of relief).

Against this backdrop, there is no basis to hold that the Batch Arbitration procedure—or any other aspect of the 2025 User Agreement's arbitration provision—is substantively unconscionable. "[N]umerous federal courts" rejected unconscionability arguments concerning

14

prior iterations of the Coinbase User Agreement, *Reznik*, 2024 WL 1055002, at *4, and there is nothing unique about the 2025 version that warrants a different result.

## II. THE COURT SHOULD STAY THIS CASE

Where, as here, a case involves "an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding," such that the court "does not have discretion." *Smith v. Spizzirri*, 601 U.S. 472, 475-476, 478 (2024). Such a stay ensures that arbitration proceedings can proceed promptly and preserves the court's jurisdiction to enforce any violations of its order. *See id.* at 477-478. Coinbase therefore respectfully requests that the Court stay this case pending the completion of individual arbitrations.

## CONCLUSION

The Court should compel individual arbitration of Plaintiffs' claims and stay this action pending completion of those arbitration proceedings.

Dated: February 24, 2026

Respectfully submitted,

*/s/ Sonal N. Mehta*
Sonal N. Mehta
Wilmer Cutler Pickering
  Hale and Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
sonal.mehta@wilmerhale.com

Alan Schoenfeld
Andres C. Salinas
Wilmer Cutler Pickering
  Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
alan.schoenfeld@wilmerhale.com
andres.salinas@wilmerhale.com