# GREENBAUM OLBRANTZ LLP

**Carter Greenbaum**
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
carter@greenbaumolbrantz.com
212-732-6837 (Direct)

March 9, 2026

**Via ECF**

Hon. Edgardo Ramos
United States District Court
For the Southern District of New York
40 Foley Square
New York, NY 10007

**Re:**    *In re Coinbase Customer Data Security Breach Litigation*
       **Case No. 1:25-md-03153 (S.D.N.Y.)**

Dear Judge Ramos,

On behalf of Plaintiffs in the above-captioned matter, I write pursuant to Local Civil Rule 37.2 and this Court's Individual Practices 2.A to request a pre-motion conference to address Plaintiffs' request for discovery in aid of their forthcoming opposition to defendants Coinbase Inc.'s ("Coinbase Inc.") and Coinbase Global Inc.'s ("Coinbase Global," together "Defendants" or "Coinbase") Motion to Compel Arbitration. Plaintiffs have met and conferred in accordance with Fed. R. Civ. P 37(a), but Coinbase has refused to provide the requested discovery.

On February 24, 2026, Defendants moved to compel arbitration pursuant to an arbitration provision contained in Coinbase, Inc.'s Individual User Agreement. *See* Dkt. 81 at 7. Coinbase argues that the arbitration provision is not substantively unconscionable because arbitration will proceed under the American Arbitration Association ("AAA") rules and therefore be conducted before a "neutral arbitrator." *Id.* Plaintiffs seek narrowly tailored discovery necessary to test that assertion—specifically, discovery addressing the extent of Coinbase's relationship with AAA and the scope of arbitrations involving Coinbase before AAA arbitrators.

Coinbase is among the top 50 most frequently complained-about companies in the United States according to the Federal Trade Commission[1] and it has spent nearly a decade litigating to compel consumer disputes into individual arbitration before AAA, including through two cases before the Supreme Court. As a result, a substantial volume of disputes involving Coinbase have been routed to AAA arbitration. Plaintiffs have reason to believe that hundreds—and potentially tens of thousands[2]—of AAA arbitrations involving Coinbase have been filed over time, including many arising from the data breach at issue in this case. Because a relatively limited pool of arbitrators administers AAA

---

[1] FTC, Top Company Complaints Report – March 2025, *available at https://www.ftc.gov/reports/top-company-complaints-report-march-2025.*

[2] *See Bernstein v. Coinbase*, Case No. 1:25-cv-05313 (N.D. Ill. May 13, 2025) Dkt 1 ¶¶ 56-60 (claiming that more than 10,000 individual BIPA arbitrations had been filed against Coinbase with AAA in 2024).

consumer arbitrations, this volume of repeat proceedings raises significant questions regarding the neutrality of the arbitral process in disputes involving Coinbase.

Coinbase knows which arbitrators rule in their favor and which do not, and it is permitted to strike the appointed arbitrator based on knowledge and experience known only to Coinbase and not to consumers. *See* CCP § 1281.91. Not only does Coinbase enjoy an unprecedented informational asymmetry, but given that there are many hundreds individual arbitrations currently pending against Coinbase Inc. and Coinbase Global related to the data breach at the center of this case, Defendants know not only which arbitrators favor them *generally* but also which arbitrators to choose *specifically for this dispute.*[3]

Research, including on AAA specifically, has repeatedly found that repeat players like Coinbase enjoy significant advantages. In fact, an analysis of 2,802 AAA employment awards determined that where the same arbitrator presides over a dispute involving a single employer, but a different employee, the employee's win rate drops by nearly 50% in "cases involving a repeat pairing."[4] Likewise, "whereas the average damage award was $27,039 in cases not involving a repeat pairing, it was only $7,451 in cases that involved a repeat-employer-arbitrator pairing." *Id*

Courts have long recognized the potential for a "repeat player" advantage in arbitration where a large corporate party regularly appears before the same arbitral forum. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 115, 99 Cal. Rptr. 2d 745, 768, (2000) (A neutral arbitrator is "essential to ensuring the integrity of the arbitration process.");[5] *Shoals v. Owens & Minor Distribution, Inc.*, 2018 U.S. Dist. LEXIS 186729, at *15 (E.D. Cal. Oct. 30, 2018) (noting concern that repeat-player dynamics may bias arbitration in favor of frequently appearing corporate parties). California courts have likewise recognized that where an employer or corporate party repeatedly arbitrates before a single arbitrator, it may obtain a structural advantage through its familiarity with arbitrator tendencies and practices. *See Sanchez v. Western Pizza Enterprises, Inc.*, 172 Cal. App. 4th 154, 177–78 (2009), *abrogated on other grounds by Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 366, 173 Cal. Rptr. 3d 289, 327 P.3d 129 (2014).

At the same time, courts require plaintiffs raising such concerns to present "particularized evidence" regarding the repeat-player effect. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006). California law expressly provides that when unconscionability is raised, the parties must be afforded a "reasonable opportunity to present evidence as to [the arbitration agreement's] commercial setting, purpose, and effect." Cal. Civ. Code § 1670.5(b). Courts routinely permit targeted discovery into arbitration practices and a defendant's history of arbitrations for precisely this purpose. *See, e.g., Martin v. Wells Fargo Bank NA*, 2013 U.S. Dist. LEXIS 71462 (N.D. Cal. May 17, 2013); *O'Brien v.*

---

[3] And where Coinbase Inc. has been unable to designate the arbitrator of its choosing under the AAA rules, it has opted instead to refuse to participate in arbitration altogether. *See Bernstein v. Coinbase*, Case No. 1:25-cv-05313 (N.D. Ill. May 13, 2025) Dkt 1 at 21 ("Coinbase, however, informed AAA it would not pay the fees AAA required.").

[4] Alexander Colvin, *An Empirical Study of Employment Arbitration: Case Outcomes and Processes*, Journal of Empirical Legal Studies Volume 8, Issue 1, 1-23, March 2011.

[5] Coinbase's User Agreement applies California law. *See.* Dkt 82-1 at 13 § 9.8 ("You and we agree that the law of the State of California, without regard to principles of conflict of laws, will govern the Agreement and any Dispute, except to the extent governed by the Federal Arbitration Act or other applicable federal law.")

*Am. Express Co*., 2012 U.S. Dist. LEXIS 64553 (S.D. Cal. May 8, 2012); *In re Carrier IQ, Inc*., 2013 U.S. Dist. LEXIS 47144 (N.D. Cal. Apr. 1, 2013).

Accordingly, Plaintiffs seek limited discovery directed to the scope of Coinbase's arbitration activity with AAA and the composition of the arbitrator pool administering those disputes. Specifically, Plaintiffs have requested the following information:

1. The number of AAA arbitrations involving Coinbase entities, both pending and concluded;

2. The amount of fees paid by Coinbase to AAA each quarter during the past three years;

3. The number of different AAA arbitrators currently presiding over Coinbase-related arbitrations and the total number of arbitrators on AAA's Consumer Arbitration Panel;

4. The number of AAA arbitrations currently pending against Coinbase relating to the data breach at issue in this case; and

5. The most recent AAA Provider Disclosure Reports for arbitrators currently presiding over Coinbase arbitrations.

This discovery is narrowly targeted to the issue Coinbase itself has placed before the Court—whether AAA arbitration provides a neutral forum for disputes involving Coinbase. The requests are limited in scope, and Coinbase has not identified any meaningful burden associated with producing the information. Nevertheless, Coinbase has refused to produce any of the requested materials.

Plaintiffs therefore respectfully request a pre-motion conference to address this targeted discovery necessary to oppose Coinbase's motion.

.

Respectfully Submitted,

*/s/ Carter E. Greenbaum*

Carter E. Greenbaum