WILMERHALE

Alan E. Schoenfeld

+1 212 937 7294 (t)
+1 212 230 8888 (f)
alan.schoenfeld@wilmerhale.com

**VIA ECF**

March 12, 2026

Hon. Edgardo Ramos
United States District Court
   for the Southern District of New York
40 Foley Square
New York, NY 10007
ChambersNYSDRamos@nysd.uscourts.gov

     Re:    ***In re Coinbase Customer Data Security Breach Litigation*,**
              **No. 1:25-md-03153 (S.D.N.Y.)**

Dear Judge Ramos:

      I write on behalf of Defendants Coinbase, Inc. and Coinbase Global, Inc. ("Coinbase") in response to Plaintiffs' March 9, 2026 letter (Dkt. 86, "Pls' Ltr.") seeking discovery purportedly related to Plaintiffs' forthcoming opposition to Coinbase's motion to compel arbitration.

      Plaintiffs' request for discovery should be denied. The discovery Plaintiffs seek is legally irrelevant to the disposition of the motion to compel arbitration, runs counter to the coequal treatment of arbitration mandated by California and federal law, and, if granted, would set a harmful precedent for future cases by inviting intrusive discovery into a company's arbitration record whenever that company seeks to enforce its contractual arbitration rights.

      Applying California law (the choice of law designated by the Coinbase User Agreement), the California Supreme Court has held that it is "uncognizable" to assert "that arbitrators might over time be biased toward repeat players that bring them business, and that the arbitral forum thus inherently favors such repeat players." *Sandquist v. Lebo Auto., Inc.*, 1 Cal.5th 233, 259 (2016). Indeed, if Plaintiffs were correct that California law recognized a rule barring a "large corporate party" from "regularly appear[ing] before the same arbitral forum" (Pls.' Ltr. 2), such a rule would plainly violate the Federal Arbitration Act, which "preempts any state rule discriminating on its face against arbitration." *E.g.*, *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022). The California Supreme Court itself recognized this in *Sandquist*, explaining that "the FAA requires that we treat arbitration as a coequal forum for dispute resolution." 1 Cal.5th at 259; *see also Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1569 (2014) (criticizing "repeat players" theory as "nothing more than … judicial hostility to arbitration," and warning that the logic would undermine the FAA by "question[ing] the objectivity of arbitrators as a whole" absent evidence of bias). In view of this precedent, courts applying California law consistently reject the same unconscionability theory Plaintiffs seek to develop here through discovery. *See, e.g.*, *Zamudio v. Aerotek, Inc.*, 733 F. Supp. 3d 931, 946 (E.D. Cal. 2024); *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1016 (S.D. Cal. 2017).

The coequal treatment called for in *Sandquist* is especially appropriate in this case because the Coinbase User Agreement calls for disputes to be resolved before the AAA, one of the largest, most reputable arbitral providers in the country. *See In re: Online Travel Co.*, 2013 WL 12123302, at *5 (N.D. Tex. Apr. 24, 2013) (plaintiffs "cite no case allowing discovery into potential biases of the AAA, which is widely known as a reputable arbitration forum"). Importantly, the AAA Consumer Rules provide that "Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives." AAA Consumer R-16(a). "Upon receipt of such information from the arbitrator or another source," the AAA is required to "communicate the information to the parties," *id.* R-16(b), so that they can seek appropriate relief, including potential disqualification, *id.* R-17. Plaintiffs never mention these protections, much less explain why they would be inadequate in arbitration proceedings. Instead, they baselessly seek the disclosure reports for *all* arbitrators "currently presiding over Coinbase arbitrations" (Pls.' Ltr. 3), even though none of those arbitrators has been identified yet for possible involvement in Plaintiffs' claims. Such a request is irreconcilable with *Sandquist*.

Nor do Plaintiffs cite a single case in which a motion to compel arbitration was denied due to a company's "relationship with AAA" or "the scope of arbitrations involving [the company] before AAA." Pls.' Ltr. 1. In fact, one of Plaintiffs' own authorities squarely rejects Plaintiffs' legal theory: In *Shoals v. Owens & Minor Distribution, Inc.*, 2018 WL 5761764, at *6 (E.D. Cal. Oct. 31, 2018) (cited at Pls' Ltr. 2), the court rejected the assertion that "business incentives bias JAMS arbitrators to repeat player defendants" and held that such a rule would be "inconsistent with … the FAA." Thus, like *Sandquist* and its progeny, *Shoals* makes clear that even if Plaintiffs' request were granted, the information provided would be legally insufficient to undermine the enforceability of the arbitration agreement.

Plaintiffs also cite (at 2) *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006), but that case likewise *undermines*, rather than supports, their request for discovery. There, the Ninth Circuit recognized (a decade before the California Supreme Court's decision in *Sandquist*) that "merely raising the 'repeat player effect' … , without presenting *more particularized evidence* demonstrating impartiality, is insufficient under California law to support an unconscionability finding." *Id.* at 1285 (emphasis added). And the court made clear that "particularized evidence" meant "evidence of bias on the part of the AAA or its arbitrators"— i.e., a showing "that the arbitrator would not be impartial" or "'specific facts which indicate improper motives on the part of [the AAA or its] arbitrators.'" *Id.* Plaintiffs have not identified any such specific facts here, and the information they seek instead (primarily case-, fee-, and arbitrator-related statistics) would come nowhere near the required showing. *See Esquer*, 292 F. Supp. 3d at 1016 ("The fact that the Defendants appear before JAMS with some degree of frequency is insufficient to find bias that warrants invalidation of the arbitration provisions.").

Plaintiffs' remaining cases do not help them either. *Armendariz v. Foundation Healthcare Psychare Servs., Inc.* did not address Plaintiffs' claimed "'repeat player' advantage"

Hon. Edgardo Ramos
March 12, 2026
Page 3

**WilmerHale**

at all (Pls.' Ltr. 2) and made clear that "the neutral arbitrator requirement" simply "[wa]s not at issue in th[e] case."  24 Cal. 4th 83, 103 (2000).  And in *Sanchez v. Western Pizza Enterprises, Inc.*, 172 Cal. App. 4th 154, 172 (2009), the agreement was unenforceable not because of the company's relationship with the arbitral provider, but because the arbitrator selection mechanism provided for under the applicable rules gave the defendant unilateral authority over the choice of arbitrator.  Coinbase's User Agreement includes no comparable feature and instead provides that arbitrators are selected through a strike and rank process in which both parties participate.[1]

      Finally, Plaintiffs are wrong (at 2) that courts "routinely permit" discovery on these topics.  It is telling that the only examples Plaintiffs can find of this purportedly "routine" event are from well over a decade ago, prior to *Sandquist* and prior to the U.S. Supreme Court's repeated reminders that the FAA preempts any state rule that "disfavors arbitration."  *E.g.*, *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 581 U.S. 246, 255 (2017).  Plaintiffs' requested discovery here, and the legal theory on which it is based would do just that.  It would seek to "invalidate an arbitration agreement" based on a "legal rule[] that appl[ies] only to arbitration." *Viking River*, 596 U.S. at 650.  Granting Plaintiffs' request, moreover, would set a dangerous precedent and invite judicial scrutiny of a company's arbitration record every time it sought to simply enforce its contractual rights.  Such a regime would not merely burden arbitration, it would functionally deter it, gravely undermining the "liberal federal policy favoring arbitration." *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 505 (2018).

      For these reasons, Plaintiffs' request for discovery should be denied.

Respectfully submitted,

*/s/ Alan Schoenfeld*
Alan Schoenfeld

---

[1] Plaintiffs' assertion that Coinbase has "refuse[d] to participate in arbitration altogether" when it "has been unable to designate the arbitrator of its choosing" is false.  *Bernstein v. Coinbase* (the only example Plaintiffs cite) had nothing to do with arbitrator selection; it involved a fee dispute in which the claimants in a mass arbitration persuaded the AAA to disregard the batch arbitration provision in the User Agreement.  *See* Reply Br. ISO Mot. to Stay, No. 1:25-cv-5313 (N.D. Ill.), Dkt. 35 at 12 (Aug. 4, 2025).  If anything, that dispute with the AAA *disproves* Plaintiffs' assertion that the AAA is likely to be biased in favor of Coinbase.