**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: COINBASE CUSTOMER DATA SECURITY BREACH LITIGATION** | **Case No. 1:25-md-03153-ER** |
| | **CLASS ACTION** |

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS'**
**MOTION TO COMPEL ARBITRATION-RELATED DISCOVERY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................................ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT.............................................................................................................................. 2

I.      THE AAA-RELATED DISCOVERY IS WARRANTED. ................................................. 2

        A.      Coinbase's opposition fails to distinguish relevant authority granting the
                discovery Plaintiffs seek here. ................................................................................. 2

        B.      The requested discovery is highly probative and imposes no material
                burden on Defendants. .............................................................................................. 4

II.     THE ESTOPPEL DISCOVERY IS WARRANTED. COINBASE GLOBAL
        CANNOT AVOID ESTOPPEL-RELATED DISCOVERY BY
        RECHARACTERIZING ITS PRIOR SWORN POSITIONS.......................................... 6

CONCLUSION........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Ashmore v. CGI Group, Inc.*,
923 F.3d 260 (2d Cir. 2019) ............................................................................................... 7

*Barron v. Shapiro*,
No. 25-77, 2026 WL 251659 (2d Cir. Jan. 30, 2026) ....................................................... 8

*Clark v. AII Acquisition, LLC*,
886 F.3d 261 (2d Cir. 2018) ........................................................................................... 2, 9

*Flores v. National Football League*,
2022 WL 3098388 (S.D.N.Y. Aug. 4, 2022) ..................................................................... 9

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
716 F.3d 764 (3d Cir. 2013) .............................................................................................. 9

*Heabeart v. Coinbase, Inc.*,
2026 WL 1250578 (S.D.N.Y. May 7, 2026) ...................................................................... 8

*Heckman v. Live Nation Entm't, Inc.*,
2022 U.S. Dist. LEXIS 241284 (C.D. Cal. June 7, 2022) .................................................. 2

*In re Carrier IQ, Inc.*,
2013 U.S. Dist. LEXIS 47144 (N.D. Cal. Apr. 1, 2013).................................................. 2, 5

*Marselian v. Wells Fargo and Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. 2021)............................................................................. 8

*Martin v. Wells Fargo Bank NA,*
2013 U.S. Dist. LEXIS 71462 (N.D. Cal. May 17, 2013) ................................................. 2

*Moton v. Maplebear Inc.*,
No. 15 CIV. 8879 (CM), 2016 WL 616343 (S.D.N.Y. Feb. 9, 2016) ............................... 9

*MSV Synergy, LLC v. Shapiro*,
No. 21 CIV. 7578 (ER), 2024 WL 4931868 (S.D.N.Y. Dec. 2, 2024) .............................. 8

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) ....................................................................................... 1, 3

*Newton v. Clearwire Corp.,*
2011 U.S. Dist. LEXIS 108794, 2011 WL 4458971 (E.D. Cal. Sept. 23, 2011) ........... 2, 5

*O'Brien v. American Express Co.,*
2012 WL 1609957 (S.D. Cal. May 8, 2012)..................................................................... 2

*Sandquist v. Lebo Automotive, Inc.*,
  1 Cal.5th 233 (2016) ........................................................................................................ 1, 3

*Stephens v. Am. Arbitration Ass'n*,
  No. 25-CV-01650, 2026 WL 878981 (D. Ariz. March 31, 2026) ................................................ 4

**Statutes**

Cal. Civ. Code § 1670.5 ........................................................................................................ 2

**INTRODUCTION**

Plaintiffs seek narrow, targeted discovery on two issues relevant to Defendants' pending motion to compel arbitration: (1) Coinbase's arbitrator-selection process and its relationship with the AAA and (2) Coinbase Global's repeated representations that the User Agreement does not bind it. Coinbase does not contend that the requested discovery would be burdensome, and it cites no case denying comparable discovery in comparable circumstances. Instead, Coinbase asks the Court to deny discovery on the theory that Plaintiffs' anticipated unconscionability and estoppel arguments are foreclosed as a matter of law. They are not.

On the AAA-related discovery, Coinbase relies almost entirely on dicta from *Sandquist v. Lebo Automotive, Inc.*, 1 Cal.5th 233 (2016), to argue that any "repeat player" theory of arbitral bias is categorically uncognizable under California law. But *Sandquist* did not concern the "repeat player" bias in arbitration, did not concern any request for discovery, and did not foreclose the development of the kind of "particularized evidence" the Ninth Circuit has recognized may support an unconscionability challenge. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006). The publicly available AAA data that Coinbase points to as a substitute for the requested discovery is incomplete and is not a substitute for the discovery Plaintiffs seek. It omits pending cases, fee payments, arbitrator strikes, and the roster of arbitrators currently presiding over Coinbase cases. What is more, the cases Plaintiffs cited, which Coinbase largely ignores in its opposition, uniformly grant the kind of discovery Plaintiffs request here.

On the estoppel-related discovery, Coinbase Global asks the Court to disregard its prior sworn representations to the AAA—that it has "no contractual relationship whatsoever" with Coinbase customers, "including no arbitration agreement"—by recharacterizing those statements as something narrower than they are. *See* Delich Decl. (ECF No. 98) ¶ 16. But Coinbase Global cannot represent in arbitration that it is not bound by the agreement, obtain dismissal on that basis,

and then invoke the same agreement in court to force claimants into arbitration. Whether judicial or collateral estoppel ultimately applies on a fuller record is precisely the question discovery is needed to resolve. *See Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266–67 (2d Cir. 2018).

For the reasons set forth below and in Plaintiffs' opening brief, the Court should grant Plaintiffs' motion and order Defendants to produce the requested discovery.

## ARGUMENT

### I.   THE AAA-RELATED DISCOVERY IS WARRANTED.

#### A.   Coinbase's opposition fails to distinguish relevant authority granting the discovery Plaintiffs seek here.

Defendants cannot and do not cite a single case denying a request for the type of discovery Plaintiffs seek about a party's relationship with its designated arbitral provider, let alone denying a request made for the reasons—or with the background—alleged here. By contrast, Plaintiffs' motion cites five cases in which courts have granted the precise type of discovery that Plaintiffs seek here. *See* Motion at 5-6 (citing *Heckman v. Live Nation Entm't, Inc.,* 2022 U.S. Dist. LEXIS 241284, at *4 (C.D. Cal. June 7, 2022); *In re Carrier IQ, Inc.,* 2013 U.S. Dist. LEXIS 47144, *20 (N.D. Cal. Apr. 1, 2013); *Martin v. Wells Fargo Bank NA,* 2013 U.S. Dist. LEXIS 71462, at *4 (N.D. Cal. May 17, 2013)*; Newton v. Clearwire Corp.,* 2011 U.S. Dist. LEXIS 108794, 2011 WL 4458971, at *7 (E.D. Cal. Sept. 23, 2011); *O'Brien v. American Express Co.,* 2012 WL 1609957, at *5-6 (S.D. Cal. May 8, 2012).

Coinbase's opposition does not even cite, let alone attempt to distinguish, four of those five cases. Nor do Defendants respond or cite to California Civil Code § 1670.5(b), which provides that when unconscionability is raised, a party must be afforded a "reasonable opportunity to present evidence as to [the arbitration agreement's] commercial setting, purpose, and effect." Cal. Civ. Code § 1670.5.

Instead, Defendants argue that the California Supreme Court held that it was "***generally*** uncognizable" to assert that an arbitrator may over time be "biased towards repeat players." *Sandquist v. Lebo Automotive, Inc.*, 1 Cal.5th 233, 259 (2016) (emphasis added). But the argument proves too much. The language is dicta because *Sandquist* did not involve a request for discovery related to arbitrator bias. It did not even involve allegations of a repeat player bias at all. Rather, in that case, the California Supreme Court dealt with a situation in which a corporation (not a consumer) argued that an arbitrator could be biased "in the form of potential higher fees" to "favor contract interpretations allowing for class arbitration." *Id.* Here, the corporation—Coinbase—is arguing the opposite: that arbitrators are not biased in their favor.

Regardless, the California Supreme Court merely observed in *Sandquist* that such claims were "generally" uncognizable. *Id.* That dicta must be read together with the Ninth Circuit's prior explanation that "merely raising the 'repeat player effect' . . .  without presenting more particularized evidence demonstrating impartiality, is insufficient under California law to support an unconscionability finding." *Nagrampa v. MailCoups, Inc.* 469 F.3d 1257, 1285 (9th Cir. 2006). Defendants have not cited a single California case prohibiting the discovery that the Ninth Circuit plainly contemplated in *Nagrampa*, and which Plaintiffs seek here (nor could they). Their failure to do so stands in stark contrast to the nearly half-a-dozen California cases Plaintiffs cite in their Motion.

Coinbase claims that Plaintiffs must come forward with facts indicating AAA is biased "*before* they may obtain arbitration-related discovery." Opp'n at 5 (emphasis in original). But Coinbase does not cite a single case for that proposition. Regardless, Plaintiffs have come forward with precisely that evidence, including:

3

- In 2024, Coinbase had the fourth highest number of arbitrations in front of AAA of any company;

- Coinbase has proprietary knowledge as to how hundreds, if not thousands, of AAA arbitrators rule in the cases Coinbase already had before AAA and it can leverage that knowledge to strike any arbitrator that has previously served as an arbitrator for Coinbase;

- There is evidence demonstrating Coinbase's efforts to game arbitrator selection in the past. *See Bernstein v. Coinbase*, Case No. 1:25-cv-05313 (N.D. Ill.), ECF No. 1 ¶ 52; and

- Recently, a court credited allegations that "arbitration results in the AAA favor corporate entities and disfavor consumers." *Stephens v. Am. Arbitration Ass'n*, No. 25-CV-01650, 2026 WL 878981, at *4 (D. Ariz. March 31, 2026).

Nevertheless, Coinbase attempts to cut the inquiry at the first step—preventing Plaintiffs from obtaining the very discovery that can help them prove why its arbitration provision is unconscionable. That attempt should be denied.

    **B.**    **<u>The requested discovery is highly probative and imposes no material burden on Defendants.</u>**

Plaintiffs have demonstrated that the discovery sought exists is relevant to the determination whether they should be compelled to arbitration. *See, e.g., supra.* In response, Defendants make no argument that the requested discovery is burdensome. Nor can they. The requests are narrow and highly targeted.

Defendants do argue that some of the information is "already publicly available." Opp'n at 10. But the data that Defendants linked to is incomplete, as Plaintiffs' Motion explained. *See* Motion at 5. As to Coinbase's specific responses to the remaining requests:

4

- Request 1, 3, & 4 (the number of AAA arbitrations involving Coinbase entities; number of AAA arbitrators currently presiding over Coinbase arbitrations; number of AAA arbitrators on the Consumer Arbitration Panel): Coinbase argues it is "not clear why Plaintiffs need that information in particular." Opp'n at 11. But the number of arbitrations as compared to the number of arbitrators would shed light on Coinbase's ability to strike AAA arbitrators until they find an arbitrator that rules in their favor. *Newton*, 2011 U.S. Dist. LEXIS 108794, 2011 WL 4458971, at *7 (allowing interrogatories with respect to the number of instances and outcomes of arbitrations).

- Request 2 (the amount of fees paid by Defendants to AAA): Coinbase does not dispute the relevance of the request, but instead argues that the Court should examine how those fees "compare to AAA's overall gross revenue." Opp'n at 11. That is not an argument against discovery.

- Request 5 (the most recent AAA Provider Disclosure Reports for arbitrators presiding over Coinbase arbitrations): Coinbase argues that the reports "have no apparent relevance given that none of those arbitrators has been identified yet for possible involvement in Plaintiffs' cases." Opp'n at 11. However, the reports of arbitrators currently presiding over Coinbase's current cases discloses prior outcomes in arbitrations, potential conflicts, and the number of current Coinbase arbitrations pending before AAA—all information that could shed light on AAA's bias. *See also In re Carrier IQ, Inc.* 2013 U.S. Dist. LEXIS 47144, at *20 ("As a general matter, evidence related to the . . . costs of arbitration, and the outcomes of arbitration is relevant to the issue of unconscionability").

- Request 6 (number of times Coinbase has stricken AAA arbitrators in pending arbitrations): Coinbase argues that the information "could not provide a basis for arguing that the User

Agreement is unconscionable" because both Coinbase and the consumer have the right to exercise such strikes. Opp'n at 12. But Coinbase utilizes its proprietary knowledge of how arbitrators rule to determine whether to strike arbitrators until they find one that they like. Evidence that Coinbase routinely engages in consistent strikes would thus tend to show that Coinbase is exploiting the arbitration selection process in its own favor.

Plaintiffs' discovery requests are not a "fishing expedition" as Defendants claimed. To the contrary, the requests are highly targeted and probative of whether Coinbase's designation of AAA is unconscionable.

## II.    THE ESTOPPEL DISCOVERY IS WARRANTED. COINBASE GLOBAL CANNOT AVOID ESTOPPEL-RELATED DISCOVERY BY RECHARACTERIZING ITS PRIOR SWORN POSITIONS.

Plaintiffs have requested discovery related to Coinbase Global's prior claims that it is not a party to or bound by the arbitration agreement is now seeks to invoke. Coinbase Global's central response is that its prior denials of the arbitration agreement are perfectly reconcilable with its current effort to invoke that very agreement. They are not.

The point of judicial and collateral estoppel is to prevent a party from escaping liability by saying one thing in a proceeding and the opposite in a separate proceeding to obtain a litigation advantage. That is exactly what Coinbase Global is attempting here, and Plaintiffs are entitled to discovery to develop the full factual record.

In sworn answers in at least 16 prior arbitrations, Coinbase Global represented that "[t]here is no contractual relationship between the parties; the User Agreement was entered between Claimant and Coinbase, Inc." Delich Decl. ¶ 5. In one such arbitration, Coinbase Global told the tribunal it was "not a party to the relevant arbitration agreement," that it had "no contractual relationship whatsoever with Claimant, including no arbitration agreement," and that "the Tribunal lacks jurisdiction over it." Delich Decl. ¶ 16. At least one arbitrator credited those representations

and dismissed Coinbase Global on that basis. Delich Decl. ¶¶ 7–8. Coinbase Global now seeks to invoke that very same arbitration agreement to drag Plaintiffs out of court and into AAA arbitration. That is "clearly inconsistent" within the meaning of *Ashmore v. CGI Group, Inc.*, 923 F.3d 260, 272 (2d Cir. 2019).

Coinbase's attempt to recast those prior denials as merely a uniform position that Coinbase Global is "not a proper defendant" but may nonetheless invoke arbitration "as a non-signatory" fails for several reasons.

First, that is not what Coinbase Global said. Coinbase Global's filings did not stop at claiming that "Coinbase Global is not a proper party." They affirmatively represented that there was "no contractual relationship whatsoever with Claimant, **including no arbitration agreement**," and that the tribunal accordingly lacked "jurisdiction over it." Delich Decl. ¶ 16 (emphasis added). The pending motion to compel rests entirely on the existence and reach of that arbitration agreement as to Coinbase Global. Coinbase Global cannot now claim it meant something narrower than what it told the AAA under oath.

Second, even on Coinbase's own retelling, the prior position and the present position cannot stand together. To obtain dismissal in arbitration, Coinbase Global asserts that no arbitration agreement reaches it. To pull Plaintiffs into arbitration here, Coinbase Global asserts that the very same agreement reaches it as a non-signatory. Those positions cannot both prevail in the same case: either the agreement reaches Coinbase Global (so it can invoke it now) or it does not (so it cannot compel arbitration). Permitting Coinbase Global to take both positions across forums "produce[s] inconsistent results" — the exact harm *Ashmore* identifies. 923 F.3d at 272.

Indeed, this Court has applied judicial estoppel in materially identical circumstances— where defendants invoked an arbitration provision to compel arbitration, then later argued the

provision did not apply—and the Second Circuit recently affirmed. *Barron v. Shapiro*, No. 25-77, 2026 WL 251659, at *2 (2d Cir. Jan. 30, 2026) ("We agree with the district court's application of judicial estoppel in declining [to accept defendant's new argument that claims were outside scope of arbitration provision]."); *MSV Synergy, LLC v. Shapiro*, No. 21 CIV. 7578 (ER), 2024 WL 4931868, at *8 (S.D.N.Y. Dec. 2, 2024) ("In any event, and importantly, Defendants are judicially estopped from arguing that the SPA's arbitration provision does not apply to the escrow agreement; Defendants took the exact opposite position in their motion to compel, and the Court adopted that position in granting Defendants' motion.")

Third, *Marselian* and *Heabeart* do not insulate Coinbase Global from estoppel-related discovery. Both addressed whether claims against a parent and subsidiary based on the same facts could be referred to arbitration under an equitable non-signatory theory; neither addressed whether a parent that has affirmatively disclaimed an arbitration agreement in prior arbitral proceedings may still invoke that doctrine. *Marselian v. Wells Fargo and Co.*, 514 F. Supp. 3d 1166, 1172 (N.D. Cal. 2021); *Heabeart v. Coinbase, Inc.*, 2026 WL 1250578, at *3-4 (S.D.N.Y. May 7, 2026). *Heabeart* may have been decided in Coinbase Global's favor, but the plaintiffs in *Heabeart* did not develop the kind of factual record Plaintiffs here have already begun to assemble through their counsel's own experiences arbitrating against Coinbase. *See* Delich Decl. ¶¶ 4–5, 16.

Coinbase's response on collateral estoppel fares no better. Coinbase argues that the "identical issue" element is not met because, in its view, the issue litigated in AAA Case No. 01-23-0001-3393 was only whether Coinbase Global was a signatory and not whether it could invoke the agreement as a non-signatory. Opp'n at 14–15. But the arbitrator there dismissed Coinbase Global on the ground that it "has no binding arbitration agreement with claimant." Delich Decl. ¶ 8. That is the same predicate Coinbase Global must now disprove to compel arbitration against

8

Plaintiffs. Given that Coinbase disputes the application of collateral estoppel, more discovery is appropriate. A complete accounting of how often Coinbase Global has disavowed the arbitration agreement, and how often tribunals have credited that disavowal, goes directly to both the elements of collateral estoppel and the equitable concerns that animate it.

Nor does *Flores v. National Football League*, 2022 WL 3098388 (S.D.N.Y. Aug. 4, 2022), foreclose discovery. *Flores* involved a plaintiff seeking speculative discovery into an arbitrator's impartiality. *Id.* at *2–4. Here, by contrast, Plaintiffs have already identified sworn arbitral filings in sixteen cases and at least one tribunal ruling adopting Coinbase Global's prior position. "Courts have permitted limited discovery into the validity of the arbitration agreement only when the party opposing arbitration 'come[s] forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement'" at issue. *Moton v. Maplebear Inc.*, No. 15 CIV. 8879 (CM), 2016 WL 616343, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774 (3d Cir. 2013)). Plaintiffs have come forward with precisely such evidence. Moreover, the Second Circuit recognizes that the "exact criteria for invoking judicial estoppel will vary based on specific factual contexts," and discovery is the appropriate vehicle for developing those facts. *Clark*, 886 F.3d at 266–67.

Finally, the requested discovery is narrow and unobjectionable on burden grounds. Plaintiffs seek "[d]ocuments sufficient to show" each occasion Coinbase Global has taken the position that it is not subject to the arbitration agreement, and each occasion a tribunal has adopted that position. Motion at 14. Coinbase Global identifies no burden in producing those records — for the obvious reason that Coinbase Global itself filed them. Coupled with the targeted factual showing Plaintiffs have already made, the absence of any burden objection confirms that the discovery should be compelled.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and compel Defendants to produce the requested arbitration-related discovery.

Dated: May 22, 2026

Respectfully submitted,

*/s/ Joseph Delich*
Joseph Delich
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th St., Suite 915
New York, NY 10017
Tel: (646) 494-2900
jdelich@fnf.law

Carter E. Greenbaum
**GREENBAUM OLBRANTZ LLP**
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
Tel: (332) 222-9119
carter@greenbaumolbrantz.com

Tina Wolfson
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com

Melissa Clark
**AHDOOT & WOLFSON, PC**
521 5th Avenue, 17th Floor
New York, NY 10175
Tel: (917) 336-0171
Fax: (917) 336-0177
mclark@ahdootwolfson.com

Brian J. Devall (*pro hac vice* forthcoming)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Admitted to Practice in Illinois
Tel: (310) 474-9111
Fax: (310) 474-9111
bdevall@ahdootwolfson.com

*Interim Class Counsel for Plaintiffs*

10